OCEAN CITY ASSOCIATION

v.

WILLIAM M. CHALFANT.

[Filed September 4th, 1903.]

1. Where a vendor sells off an estate in lots, with restrictions upon the use of the lots sold, he will lose his right in equity to enforce the restrictions against one grantee, if he has knowingly permitted other grantees to violate the same restrictions, the effect of which violation is to abrogate the purpose of the restriction and alter the general scheme intended to be conserved by it.

2. Upon the facts established—*Held*, that the complainant has waived its right to equitable assistance.

*Mr. S. Stanger Iszard* and *Mr. David J. Pancoast*, for the complainant.

*Mr. Albert A. Howell* and *Mr. Samuel W. Beldon*, for the defendant.

REED, V. C.

The purpose of this suit is the enforcement of a restrictive covenant in a deed made by the Ocean City Association of lands now in the possession of William M. Chalfant.

The Ocean City Association is a corporation which purchased several thousand acres of land on Peck's Beach, which land it laid out as a seaside resort of a religious character. It incorporated in all its deeds to purchasers of lots a covenant that no building should be used or occupied as a drug store without the written consent of the Ocean City Association; also, that no business of any kind whatever should at any time be carried on upon the Lord's day, commonly called the Sabbath or Sunday; nor should any act, matter or thing be done that is a desecration of said Lord's day; and that the land conveyed should be under

and subject to the conditions, restrictions and regulations as may be made to insure the original intention and purpose of said association in securing the whole island as a Christian resort.

The defendant, William M. Chalfant, occupies the building on the northeast corner of Eighth street and Wesley avenue, in Ocean City, 'as tenant under Frederick Rapp, whose title to the same is derived from the Ocean City Association through a deed containing the above-named restrictions. Mr. Chalfant keeps a drug store. He admits that in July and August, 1901, he sold on Sundays in said drug store soda water and like beverages from his fountain, and articles for family and·medicinal use. He admits that he occasionally sold candies and like merchandise, including a comb and brush, soap and other things that a drug store is supposed to sell. The defendant's violation of the restrictive covenant is undenied.

His defence is that the association has waived its right to enforce this covenant against him, because it has permitted violations of the same covenants by other grantees.

The recognized doctrine is that where a vendor sells off an estate in lots, with restrictions upon the use of the lots sold, he will lose his right in equity to enforce the restrictions against one grantee, if he has knowingly permitted other grantees to violate the same restrictions, the effect of which violation is to abrogate the purpose of the restriction and alter the· general scheme intended to be conserved by it. *Roper* v. *Williams, 1 Turn. & Russ. 18; Peek* v. *Matthews, L. R. 3 Eq. 515.*

This rule is applicable whether the suit is brought by the covenantee or by one of several grantees of land sold in accordance with the general scheme by the original covenantee.

It rests upon the equitable ground that if anyone who has a right to enforce the covenant and so preserve the conditions which the covenant was designed to keep unaltered, shall acquiesce in material alterations of those conditions, he cannot thereafter ask a court of equity to assist him in preserving them.

The complainant may be in privity with the defendant, and have his action at law for a breach of covenant, but, nevertheless, in this situation, a court of equity will not assist him. *Duke of Bedford* v. *Trustees of British Museum, 2 My. & K. 552.*

The question of waiver of the right to enforce a restrictive covenant by permitted violations of the covenant is dependent upon the character and materiality of the permitted breach. *Knight* v. *Simmonds, 2 Ch. (1896) 294; German* v. *Chapman, 7 Ch. Div. 271.*

A permitted limited breach may not conclude for all time in respect to a wider and more important breach. *Lattimer* v. *Livermore, 72 N. Y. 174.*

It may be observed also that a permitted breach may be of one of two kinds of covenants, one class respecting erections upon, or a permanent physical change in the property subject to restriction, and the other class respecting the use of the property for certain occupations, without any physical changes in the property itself of a permanent character.

While the doctrine of waiver applies to both kinds of covenants, the propriety of the enforcement of the doctrine in particular instances may differ in each. This results from the fact that breaches of the first class usually permanently change the conditions which the covenant was designed to perpetuate, while breaches of the second class do not necessarily have that result.

It is only when the person in whom the right to enforce the covenant resides has permitted such infringement of its provisions as results in alterations that cannot be corrected, or which it is manifest there is no intention to have corrected, that he is precluded from further enforcing the covenant.

When such a person has permitted a covenantor to spend money in the erection of buildings which are violative of the restrictions, he is estopped from successfully suing in a court of equity for a mandatory injunction to restore the *statu quo,* and the conditions having thus become permanently changed, he cannot sue another covenantor upon a similar covenant.

When, however, the known breach consists in introducing upon the property some occupation interdicted by the covenant, and no considerable amount of money has been expended in fitting the property for a particular business, or the character of the business is such that it constitutes an inconsiderable alteration of the conditions which the parties had in view, then

the waiver of the right to restrain other and more considerable breaches may not result.

The first class of covenants are dealt with in the cases of the *Duke of Bedford* v. *Trustees of British Museum, supra; Roper* v. *Williams, supra,* and *Peck* v. *Matthews, supra;* and the second class in *Knight* v. *Simmons, supra,* and *German* v. *Chapman, supra.*

In the first three cases it was held that the complainants had waived their rights, but in the last two cases it was held that they had not.

The question involved in each case was, however, common to all, namely, whether the complainant had permitted the situation, intended to be fixed by the covenant, to be materially and permanently altered.

The present case is one, as is perceived by the language of the covenant already displayed, dealing with occupations. The purpose of the covenant was to prevent the transaction of any kind of worldly business on Sunday. It was to put upon each lot owner, by contract, the same restriction in this respect as is imposed by the Vice and Immorality act.

It is proved that on Sundays three bath-house keepers had, for a number of years, conducted their business of hiring bathing-suits and dressing-rooms. It is proved that on Sundays meat and ice cream were delivered; that hacks ran, and livery stables hired out horses and vehicles; that cigar and fruit stores did business, and newspapers were sold on the streets; that trolley lines had run in the streets, and railroad trains ran through the city.

Some of these transactions must be put out of sight, because it does not appear that they were violative of the covenant. It does not appear how the railroads, the hackmen and the paper venders became subject to the restriction. In some of the other instances the violations were not brought to the knowledge of the officers of the association, and were not so frequent or of such character as to raise the inference that they must have known of them.

Then, in some instances, it appears that there were attempts, by action at law and by prosecutions, to stop acts which were infringements of the covenant.

If it appeared that the officers of the complainant had used reasonable diligence in repressing all of these violations of which they had knowledge, although it should appear that such prosecutions may have failed of their object, I do not think the complainant should be held to have waived its right to ask for the assistance of this court.

But it appears that the officers have not used reasonable diligence in preserving the character of the association which the covenant was calculated to secure.

They may not grant immunity to one, and prosecute other infringers of the same covenant.

Trolley cars and bath-houses are undoubtedly attractive and important features of seaside resorts at all times; but if their operations on Sundays conflict with the covenant, they stand, in respect to the covenant, on the same footing as any other business.

It appears that the trolley cars ran with impunity on Sundays. The use of the streets may not have been in violation of the covenant, but the power-house, in which the energy which runs the cars is generated, is admittedly upon land subject to the restriction.

Again, the bath-houses have been for years violating the covenant with increasing boldness and publicity.

Some three years before the institution of the present suit a bill was filed by the association against Samuel Schurch, one of the bath-house keepers, to enjoin him from violating the covenant. A preliminary injunction was refused by Vice-Chancellor Grey, whose opinion is reported in *12 Dick. Ch. Rep. 268*. This case was never brought to final hearing. During these three years, as before, the bath-house keepers have been conducting a Sunday business without further contest.

In my judgment, the complainant has waived its right to equitable assistance, and the bill should be dismissed.