[No. 16132.    Department One.    December 20, 1920.]

## George W. Johnson et al., Respondents, v. Mt. Baker Park Presbyterian Church, Appellant.[1]

Frauds, Statute of (13)—Sale of Land—Oral Building Restrictions. Purchasers of lots in a residential section, with restrictions against building anything except detached residences, under an oral agreement that all other lots would be sold under the same restrictions, have no interest or easement in other lots thereafter sold without building restrictions, upon which to base an action to restrain the erection of a church; since the oral agreement would be void under the statute of frauds, and they must prevail, if at all, upon the principle of estoppel.

Covenants (10)—Construction and Operation—Use of Property—Building Restrictions. Where an addition was advertised, put on the market, and largely sold out under a general scheme of restricting all buildings to first class detached residences, a church society taking a lot without restrictions, but with full notice of the scheme, is estopped and will be enjoined from building a church on the premises purchased.

Same. The original building scheme by which an addition was sold out with restrictions against building anything except first class detached residences, certain distances from the street, is not shown to have been materially violated by the fact that lots were sold without restrictions for the purpose of building a school house, a city fire station, a community store building and garage, and a community club house in which the lot owners owned one share;

[1]Reported in 194 Pac. 536.

nor by the fact, owing to the peculiar shape of some of the lots, that there was deviation from the provision as to the distance from the street.

INJUNCTION (24)—CONTRACTS—BREACHES WHICH MAY BE RESTRAINED. An injunction to prevent the violation of restriction covenants or agreements as to the nature, use or location of buildings in a residential section may be granted without showing that the violation of the restrictions will result in damage to the complaining lot owners.

COVENANTS (10)—USE OF PROPERTY—BUILDINGS. A clause in various deeds limiting all buildings to be erected in a residential section to detached residences, will be enforced against the erection of a church.

Appeal from a judgment of the superior court for King county, Davidson, J., entered July 31, 1920, in favor of the plaintiffs, in an action for an injunction, tried to the court. Affirmed.

*Preston, Thorgrimson & Turner,* for appellant.
*Reynolds, Ballinger & Hutson,* for respondent.

BRIDGES, J.—The purpose of this action by the respondents was to enjoin the appellant from erecting a church on Lot 7, Block 27, Mount Baker Park Addition to the city of Seattle, Washington. The facts are not greatly in dispute; we find them to be as follows: The Hunter Tract Improvement Company, many years ago, became the owner of a tract of land containing about two hundred acres. In 1907, it platted this land into lots, blocks, streets, avenue and alleys, as "Mt. Baker Park, an addition to the city of Seattle." There were originally about eight hundred lots. At the time of platting, the improvement company determined to make the addition a strictly high-class residence section, and that it would not permit any buildings other than residences, and that there would be embodied in the deeds to all lots sold, a restriction clause for the purpose of carrying out this plan. To this end it pro-

cured special printed blank forms of deeds to be made, in which the following clause was embodied:

"This sale is made subject to the following restrictions; nothing but a single, detached residence, costing not less than ———— thousand dollars ($————) shall be built on any one lot described in this deed, and when built it shall be used for residence purposes only. No old buildings shall be moved thereupon. No buildings shall be nearer than —— feet from the street line of said lot, upon which said building faces. If the grantee or anyone claiming under the grantee shall violate any of the aforesaid restrictions, the title to the land hereby conveyed shall forthwith, without notice and without entry, revert to and rest in the grantor."

At all times the improvement company made public, by advertisements, oral statements and otherwise, its determination to make this subdivision a strictly residence section.

In 1910, the respondents, Johnson and wife, purchased from the improvement company lot 3, in block 28, of the addition, and the deed which they received contained the above mentioned restriction clause. In 1909, the improvement company sold lot 4, in block 28, to one O'Melviney, and the latter conveyed the lot to the present plaintiffs, Hamilton and wife, and each of these deeds contained the usual restrictions. In 1919, the improvement company sold lot 7, block 27, of the addition to the appellant. Its deed did not contain any restriction clause. Before the sale to the appellant, the improvement company had sold and deeded to various persons about six hundred and fifty of the eight hundred lots, and all such deeds, with the exception of four or five hereafter to be mentioned, contained the usual restriction clause. All persons buying lots were told, and understood from the beginning, that the addition was to be used exclusively for residence purposes;

and at the time the respondents purchased their lots,
they were informed by the improvement company that
the whole addition was restricted, and that restriction
clauses similar to those put in their deeds would be
embodied in all other deeds.   Like information was
generally given to anyone who purchased.   People
purchased lots in this addition for no other reason
than that it was represented, and they understood, that
the whole property was to be devoted to residence
purposes only.   Because of such restrictions, the lots
were sold at from fifteen to twenty per cent more than
they would have sold for had the district not been re-
stricted.

The appellant bought its lot with knowledge of all,
or substantially all, of the controlling facts.   It had
knowledge that at all times there had been a concerted
action for the purpose of making the addition a strict-
ly private residence one, and that deeds issued by the
improvement company to purchasers contained the re-
striction clause above mentioned.   In fact, at the time
of the purchase by appellant, and as a part of that
transaction, it entered into a written agreement with
the improvement company which recited that:

"Whereas heretofore the party of the first part [the
improvement company] has conveyed lots in said addi-
tion and by deeds and instruments of conveyance has
provided that nothing but a single, detached dwelling,
costing a specified amount, shall be erected upon said
lots so conveyed, now, therefore, in consideration of
the premises, the party of the second part [appellant]
hereby agrees to indemnify and save harmless the
party of the first part from any and all costs or dam-
ages which may accrue to the party of the first part
by reason of any claim which may be asserted or ac-
tion which may be commenced, against the party of
the first part, on account of the failure of the party of
the first part to include in said deed to the party of

the second part any building restrictions. . . . Furthermore, the party of the second part hereby agrees that in the event of it ever selling the above described lot prior to the erection of a church thereon, it will embody building restrictions in the conveyance which will prohibit the erection of any kind of building upon said lot except a single, detached dwelling, which shall cost at least five thousand dollars ($5,000) and set back twenty-five (25) feet from 34th Avenue, South.''

The appellant intends to build a church on its lot, unless prevented by the courts. The lower court enjoined it from constructing any church upon this lot, and from that judgment it has appealed.

The several reasons advanced for the reversal of the judgment have been ably briefed and argued by the parties. It seems to be appellant's contention that respondents cannot have any legal ground for seeking to enjoin the erection of the church unless they can show some right, title, interest or easement in the so-called church lot; and that the only testimony tending to show such interest or easement is in the oral promises of the improvement company to purchasers that it would incorporate the usual restriction clause in all deeds made by it, and that the whole addition would be restricted to residences only; and that, since such interest or easement cannot thus be legally created, respondents could not have maintained a similar action against the improvement company; consequently, they cannot maintain this action against appellant. In other words, it contends that the cause of action, if any, of the respondents, is defeated by the statute of frauds, which reads as follows:

"All conveyances of real estate or of any interest therein, and all contracts creating or evidencing any encumbrance upon real estate shall be by deed.'' § 8745, Rem. Code.

Appellant cites the following cases, among others, in support of its position: *Sprague v. Kimball,* 213 Mass. 380, 100 N. E. 622, Ann. Cas. 1914A 431, 45 L. R. A. (N. S.) 962; *Rice v. Roberts,* 24 Wis. 461, 1 Am. St. 195; *Newton v. City of Dunkirk,* 121 App. Div. 296, 106 N. Y. Supp. 125; *Werner v. Graham,* 181 Cal. 174, 183 Pac. 945; *Wolfe v. Frost,* 4 Sandf. Ch. 72; *Mc-Cusker v. Goode,* 185 Mass. 607, 71 N. E. 76. To this list may be added the recent case of *Ham v. Massasoit Real Estate Co.,* 43 R. I. 293, 107 Atl. (R. I.) 205, 5 A. L. R. 440.

On the other hand, respondents base their right of action upon the doctrine of equitable estoppel and, among others, cite the following cases in support of their contention. *Tallmadge v. The East River Bank,* 26 N. Y. 105; *Allen v. Detroit,* 167 Mich. 464, 133 N. W. 317, 36 L. R. A. (N. S.) 890; *Knapp v. Hall,* 20 N. Y. Supp. 42; *Deuster v. Alvin,* 74 Ore. 544, 145 Pac. 660; *Bimson v. Bultman,* 3 App. Div. 198, 38 N. Y. Supp. 209; *Lowrance v. Woods,* 54 Tex. Civ. App. 233, 118 S. W. 551; *Bridgewater v. Ocean City R. Co.,* 62 N. J. Eq. 276, 49 Atl. 801; *Scott v. Roman Catholic Archbishop,* 83 Ore. 97, 163 Pac. 88. To which might be added the following cases: *Hisey v. Eastminster Pres. Church,* 130 Mo. App. 566, 109 S. W. 60; *Scott v. Avery,* 156 Mich. 674, 121 N. W. 825; *Bostwick v. Leach,* 3 Day's Rep. 476.

We have here, then, a case involving the following outstanding facts: The improvement company platted this land and put it on the market with the intention of limiting the use of the various lots to residences only. This intention has been in all respects made public and known to each purchaser, and has been systematically carried out. Conforming to this scheme, some years ago it sold lots to the plaintiffs, and its deeds of conveyance contained building restriction clauses. When

more than three-fourths of the lots had been conveyed by similar deeds, it conveyed to appellant the lot in question by deed which did not contain any use restriction, but appellant at the time of purchase had complete notice of the restricted use plan.

The statute of frauds cannot be involved except where the question of interest or easement in land is involved. We think it must be conceded that in this case the respondents have no interest or easement in appellant's land in the sense of the statute of frauds. There is certainly nothing in the case to show any writing creating such interest or easement, nor is there anything which might be construed as creating or attempting to create such interest or easement, other than the testimony to the effect that, when it made its deeds to respondents, the improvement company represented to them that restriction clauses would be placed in all deeds made by it. But this, being only an oral promise, would be wholly unenforcible as an attempt to create an interest or easement in appellant's land.

The oral testimony in this case was admissible, not for the purpose of attempting to create an interest or easement in appellant's land, but only for the purpose of assisting in showing the general restricted use program, initiated in the beginning by the improvement company and subsequently carried out. If, therefore, respondents' right to relief must be based on some interest or easement in, or incumbrance upon, appellant's land, they cannot succeed.

But we are of the opinion that the statute of frauds is not in this case, and that the respondents are entitled to the relief sought by them without having an interest or easement in appellant's lot. Their rights are based solely on equitable principles. It is imma-

terial whether they have any interest or easement in appellant's property. The point is whether, in good conscience, and by the application of well known equitable principles, the appellant is estopped to use its property for the purpose of building a church thereupon.

Here the appellant bought its property with knowledge of all the facts; it knew that the improvement company from the beginning had established and advertised a general plan whereby all of the property in this subdivision should be used for residence purposes only; it knew that the improvement company had agreed with a great many purchasers of lots, that the platted addition would be used only for restricted purposes; it knew that the deeds to nearly all lots which had been sold contained clauses restricting the use of the lots sold. In fact, by the contract which it entered into with the improvement company when it bought its lot, it agreed to protect the improvement company against any damage or expense resultant from deeding to it without restrictions, and therein it expressly agreed that, if it sold its lot before constructing the church, it would insert in its deed the restrictive clause. Notwithstanding all of this knowledge, it now proposes to build its church in direct contradiction to the general development plan known to it. If appellant may, under these circumstances, build a church, so may the owner of another lot build an apartment house, or a flat, or a public garage, or a store building.

It seems perfectly plain to us that, if this suit had been against the improvement company to enjoin it from making to appellant a deed without restrictions, such suit must have succeeded upon equitable principles; and if it could not successfully defend, neither can the appellant, who had all the knowledge the im-

provement company had. By its conduct and representations, the improvement company imposed on its remaining lots certain use restrictions which it may not now violate, and these restrictions remained imposed on the lands in the hands of others purchasing with notice. There is a wide difference between actual legal ownership of an interest or easement in the real estate of another, and the right, because of equitable principles, to demand that property of that other shall be used only in a certain manner. The one right is based on partial legal title, while the other is based on conduct, representations and acts which in justice, between man and man, may not be repudiated.

Equity originally arose out of the fact that the law was unable to give relief in many instances where fair dealing and good conscience demanded that relief should be given, and so equity here will say to the appellant that, having bought its property with full knowledge of the rights and privileges of others, it may not now claim the right to use the property in any way it may see fit.

It is most generally held, under a restricted building scheme such as is involved here, that one whose deed contains a restriction clause has a right to enjoin another, whose deed has a similar restriction clause, from violating such restriction. See cases heretofore cited and extensive note to *Judd v. Robinson,* 41 Colo. 222, 14 Am. & Eng. Ann. Cas. 1018.

The remedy, in cases such as the above mentioned, must be based on equitable principles, because it cannot be said that the one party has an interest or easement in the property of the other created by any written instrument; and if relief should be granted under those circumstances, we can see no reason why similar relief should not be granted under the showing here.

In the case of *Tallmadge v. The East River Bank,*
*supra,* it was held that the owner of land may, by
parol agreement with the purchasers of successive
parcels in respect to the manner of the improvement
and occupation, affect the remaining parcels with an
equity, requiring them to be occupied in conformity
with the general plan, which is binding upon a subse-
quent purchaser, with notice of the fact, although the
legal title be absolute and unrestricted.

In the case of *Bimson v. Bultman, supra,* the facts
were that the German Improvement Company owned a
large tract of land which it platted into lots, blocks
and streets. It determined to sell the lots only to per-
sons who would construct stone or brick buildings
thereon. The plan of restricted building was given out
by advertisements, signs and otherwise. The improve-
ment company conveyed a number of lots by deed, con-
taining restricted building clauses. The deed obtained
by the defendant had no such clause, but at the time of
his purchase he had full knowledge of the general re-
striction plan and of restriction clauses in other deeds.
The suit was to enjoin the defendant from erecting a
frame building. The court said:

"The principle which supports the judgment in this
action is that, where an owner of land contracts with
the purchasers of successive parcels in respect to the
manner of the occupation and improvement of such
parcels, he thereby affects the remainder of the land
with an equity which requires it also to be occupied and
improved in conformity to the general plan, and this
equity is binding upon a subsequent purchaser of the
remaining parcel, who has notice of the prior agree-
ment, though his title be unrestricted."

In the case of *Lowrance v. Woods, supra,* it was held
that, where a townsite company, as part of a general
scheme, designated a certain block as exclusively resi-

dence property, it was, in effect, a covenant with the purchasers of lots that the company owning such lots would limit the use of all other lots in that block to residence purposes, and the covenant binds any other person who purchases with knowledge.

In the case of *Bridgewater v. Ocean City R. Co.,* *supra,* it was held that, where a general scheme of land improvement was announced, and that certain lots should be devoted to a special purpose only, an implied covenant is entered into between the owners of each lot purchased, and that each purchaser might enforce this covenant against the grantor or his grantee, who purchased with notice of the implied covenant.

In the case of *Hisey v. Eastminster Presbyterian Church, supra,* the facts were that the Abington Land Company opened up a subdivision of land with a view of having it built up with residences. The plaintiff bought a lot and erected a dwelling, and in so doing relied upon the promises of the owner of the property that deeds to other lots would contain restrictive building clauses similar to those in his deed. The purchaser's deed also contained a clause restricting his use of the property, and also an additional clause to the effect that similar restrictions should be written in all other deeds. Subsequently the church purchased a lot, the deed to which contained no restriction, but the trustees of the church, at the time of the purchase, were fully aware of the intention to make the subdivision a strictly residence one and were aware of the restrictive clause in the plaintiff's deed. The suit was to enjoin defendant from erecting a church upon its lot. The court said:

"The question, whether the covenant runs with the land, seems to be material only on the question of notice; if the covenant runs with the land then it binds the owner of the land, whether he had knowledge of

it or not; for he takes no greater title than his predecessor had to convey. But if the covenant does not run with the land, but the land is subject to what is sometimes called an equity and other times a negative easement in favor of adjoining land, then in order to enforce this easement against the land, it is essential that the owner shall have taken the land with notice of it."

Many other cases are of the same general character, and all recognize the equitable estoppel doctrine to which we have referred.

It must be admitted that there are some cases which appear to be in conflict with those above cited and with the doctrine which we here advocate. The case of *Sprague v. Kimball, supra,* is of that character. That was a suit by the owners of certain lots severally conveyed to them by deed from one Kimball, which deeds contained certain building restrictions, to enjoin him from conveying certain other portions of the property without restrictions. Kimball owned a tract of land which he platted and, before selling the lots, he established a general building scheme applicable to the entire tract. The scheme was that no building should be constructed within a certain number of feet of any street. These restrictions were in the deeds given to the plaintiffs. At the time of making these deeds, Kimball, the owner of the rest of the property, orally agreed with the plaintiffs that he would not sell any other lots without putting the usual building restrictions in the deeds. The court held that, where the owner of a tract of land sold certain lots, upon which he imposed uniform restrictions, and agreed orally, as a part of the consideration for the purchase, to impose similar restrictions upon lots subsequently sold from the remaining land, such oral promise is a contract for the sale of an interest in land within the meaning of the

statute of frauds, and could not be enforced in equity in the absence of a memorandum signed by the party to be charged.

The case of *Ham v. Massasoit Real Estate Company, supra,* would, at first glance, appear to be contrary to the rule we have announced. The defendant owned and platted certain lands and the plaintiff purchased one lot by deed, containing a restricted use clause, and at the time of the purchase, the defendant represented that all other lots within certain blocks would be conveyed with like restriction clauses. Deeds to certain other lots also contained the restricted use clauses, but shortly after conveying to the plaintiffs, the defendant conveyed several of the other lots free of such clauses. This suit was brought to enjoin the defendant from conveying one of the lots without embodying in the deed the usual restriction clause. It was claimed that plaintiff could have no right in the defendant's property without having some ownership or easement in it, and that the oral agreement of the defendant to put restricted clauses in other instruments was in violation of the statute of frauds and that the plaintiff could not recover. That case, however, may be distinguished from this because the court found that, whatever may have been the original intention of the defendant concerning the restricted use of the lots, that intention was not carried out, and that a much larger number of lots were sold free from restriction than were conveyed subject thereto.

In the case of *Wolfe v. Frost, supra,* it was held that an oral agreement between the owners of two adjoining city lots that, if one would erect a building on his lot three feet back from the street line, the other, when he built his house, would set it back the same distance from the street, undertook to create an interest

or easement in land and was void by the statute of frauds. This case seems to have been decided exclusively upon the defense of the statute of frauds and the equitable estoppel doctrine does not appear to have been considered by the court.

There are other cases which, in a general way, lend support to the contention of the appellant. In so far as these cases seem to hold that, under circumstances similar to those involved here, the rights of a plaintiff must be based upon some kind of ownership or some easement in the defendant's property, we cannot follow them.

But appellant contends that the original building scheme has not been complied with, and that the rule we have announced should not be applied for that reason. The facts in that regard are as follows: Prior to the time the plaintiffs bought their lots, and in 1907, the improvement company sold several lots in block 1 of the addition to Seattle School District No. 1. These lots are still vacant. In 1910, the improvement company sold fourteen lots in block 7 to Seattle School District No. 1, on which it built a large school building, commonly known as the Franklin High School. In 1912, lot 4, in block, 7 was sold to the city of Seattle for fire station purposes, and the city thereafter erected a fire station thereon. In 1909, lot 1, block 31, was sold for the purpose of erecting thereon a community store building and garage, and such buildings are now thereon. In 1919 there was sold to the Mount Baker Club, Inc., lot 2 and a part of lot 1, in block 31, for the purpose of erecting thereon a community club house, each lot owner in the district owning one share of the community club corporation stock. None of these last mentioned five deeds contained the usual or any restrictive clauses.

A copy of the original plat which has been used in selling lots shows that certain lots were sold to the school district and that certain other lots were held or reserved for the community club house and store. At times, because of the peculiar shape or slope of lots, the clauses in certain deeds with reference to constructing houses within designated distances from the street, have been violated, but such violations have usually, if not always, been with the knowledge and consent of the improvement company.

Under these facts we cannot hold that the original building scheme has been materially violated, or that respondents, by their silence or conduct, have waived their right to insist on the observance of such.

Appellant next contends that the injunction was wrongfully issued, because respondents failed to show that they would be damaged by the erection of the church. We agree that the testimony fails to show that respondents' property would be materially lessened in value because of the construction of the church; but it does not follow that they are not entitled to the relief which they seek. Respondents do not base their objection on the erection of a church of this particular denomination, or on the damage to their property. They are seeking to avoid the breaking down of the restricted use plan under which they bought. It is well settled that restrictive covenants or agreements as to the nature, location, or use of buildings may be enforced without showing substantial damage to the complainant by reason of the violation thereof.

In *Lowrance v. Woods, supra,* it is said:

"The mere fact that a breach of covenant is attempted is a sufficient ground for the interference of the court by injunction. A covenantee has a right to have the actual enjoyment of the property *mode et forma,*

as stipulated for by him. It is no answer to say that the act complained of will inflict no injury on him or will be even beneficial to him. It is for the plaintiff to judge whether the agreement shall be kept as far as he is concerned; or whether he will permit it to be violated. It is not necessary that he should show that any damage has been done.''

See, also, the following: 4 Pom. Eq. Juris. § 1342; *Kirkpatrick v. Peshine,* 24 N. J. Eq. 206; *Hartman v. Wells,* 257 Ill. 167, 100 N. E. 500, Ann. Cas. 1914A 901; see also extended note to last case.

It is further contended that the restrictions are unreasonable and ought not to be held to include a building to be used for church purposes. The argument in this behalf is that, to provide that there may not be any churches within a district covered by some eight hundred lots in a city would be unreasonable; that the rule with reference to restrictions on apartment houses, flats, stores public garages and other like places, ought not to be applied to a church. We cannot agree with this argument. We know of no reason why a man may not by contract provide against the one as well as the other. It has been substantially so held in a number of cases. The case of *Scott v. Roman Catholic Archbishop, supra,* was a suit to enjoin the construction of a church. In that case the court said:

''The clause in the various deeds limiting the buildings to be erected on lots in Laurelhurst to those designed for residential purposes is a restrictive covenant and is valid even where the building which it is proposed to erect is intended for school purposes. . . . Such a restriction will also be held valid as against the erection of a church within the restricted area.''

See, also, *St. Andrew's Lutheran Church's Appeal,* 67 Pa. St. 512; *Allen v. Detroit,* 167 Mich. 464, 133 N. W. 317, 36 L. R. A. (N. S.) 898.

We conclude that the judgment of the trial court was correct, and we therefore affirm it.

PARKER, FULLERTON, MACKINTOSH, and MOUNT, JJ., concur.