[No. 18651. Department Two. January 9, 1925.]

VICTOR RONBERG et al., Appellants, v. HERBERT SMITH et al., Respondents.[1]

INJUNCTION (24)—COVENANTS (10)—BREACH OF CONTRACT—VIOLATION OF BUILDING RESTRICTIONS. A court of equity will not by injunction enforce an equitable estoppel against the violation of building restrictions in a residential district, at the suit of an adjoining lot owner who bought his lot after the offending building was commenced and remained silent for several weeks while the work was progressing, knowing, when he purchased, that the restrictions had been habitually violated by similar structures without protest.

Appeal from a judgment of the superior court for King county, Frater, J., entered January 19, 1924, in favor of the defendants, in an action for an injunction, tried to the court. Affirmed.

*Karr & Gregory* and *H. G. Sutton,* for appellants.
*Wright & Catlett,* for respondents.

[1]Reported in 232 Pac. 283.

MITCHELL, J.—Victor Romberg and wife, the owners of lot 5, block 20, University Park Addition to Seattle, brought this action to enjoin Herbert Smith and wife from erecting and maintaining two residence duplex houses on their adjoining lot 4 of the same block and addition. The superior court denied the plaintiffs any relief and they have appealed.

Property consisting of forty acres, situate near the state university, was platted in 1906, and lots were sold with the expressed purpose of making it a residential district. The deeds of conveyance contained building restrictions that, for a period of twenty years from October 8, 1906, the grantee, his heirs and assigns should not erect or maintain, or suffer to be erected or maintained on the premises, "any flat, apartment, store, business or manufacturing building, or to allow any building erected, either in whole or in part, to be used for business or manufacturing purposes, . . . nor erect or suffer to be erected on any part of said premises a dwelling of value less than twenty-five hundred dollars, nor less than two stories high, . . . nor erect more than a single residence on any lot, nor erect any building across any lot."

The parties to this suit purchased their properties with an understanding of the plan. It appears that the district was popular, being near the university, and that some eighty-five to ninety per cent of the property has been sold and improved. During the last several years prior to the transaction here complained of, changes, more or less important, occurred in the district without any apparent hindrance or objection by any one, and within the knowledge of these litigants at the time of their respective purchases. By alterations of buildings or by original construction, eight buildings, spoken of as duplex or apartment houses or flats, were being maintained, one of which was con-

structed across a block from street to street, with en-
trances on each street, and the building divided by a
solid partition crosswise of the whole building near
the center. Each of these structures accommodates
from two to five tenants or families. One building,
originally a residence, had for some years been occu-
pied or used as an Oriental store by a firm that imports
and engages in the sale, barter and trade of its goods
in that building. Two restaurants are being operated
in the district and a large number of student boarding
houses. Some fifteen or twenty commodious and cred-
itable sorority and fraternity houses have been built,
and a number of others have purchased property for
the construction of similar buildings. There are, of
course, a great many residences that furnish rooms for
students. That a number of these places constitute
breaches of the restriction clause of the conveyances,
there can be no doubt; others may not.

Respondent Smith bought his lot in January, 1922.
It was not improved. It lies across a block from 19th
Avenue to 20th Avenue, one hundred and eighteen feet.
On July 25, 1923, upon written application, he procured
a written permit from the superintendent of buildings
of the city to build two two-family houses, each two
stories, and two two-car garages on his property.
Nearly all the property in the block was at that time
improved, the buildings facing on 19th Avenue. Smith
commenced construction on August 15 of the garages
and the first house on 20th Avenue and continued, so
that by September 16 he had built the two double con-
crete garages over which one house was to be erected
on 20th Avenue. He had dug the basement and had
all the forms in for the building on that avenue, with
the forms and reinforcing irons in for the foundation
extending further towards 19th Avenue than was nec-
essary for the building on the 20th Avenue end, and

had the excavation for the building on 19th Avenue partly done.

On September 16 or 17, appellant bought his lot, already improved as a residence, and from that time on was around the premises nearly every day and observed the progress of Smith's work. On and prior to October 4 it had progressed until the structure for the first building was up and the roof on. It plainly showed a kitchen, doorway and steps into the basement at the rear of that structure near the center of the lot. The forms were in and concrete being poured for the foundation for the other house and the excavation for it completed. He had made contracts for material; and the lumber, sand, gravel and cement for the second building were all on the ground. The appellant was silent. Other than upon his request, Smith allowed him to take a portion of the dirt excavated from the site of the second building to fill in a low place under the porch steps of appellant's residence.

After all of this, and on October 4, appellant caused written notice to be given Smith, charging him with a violation of the restrictive building clause of his conveyance, and that, unless he discontinued building, an action would be brought against him therefor, and to compel him to restore the lot to its original condition. Immediately on getting the notice, Smith interviewed the appellant, exhibiting his plans for the construction of buildings to cost $18,000 to $20,000, leaving the average space in front of the building on 19th Avenue, and claiming they would not hurt but help the value of appellant's property. As to this interview the record presents a dispute, each of the parties claiming that the other promised to see appellant's attorneys about the matter. Within a day or two Smith continued his building, and on October 18 this action was commenced, the trial of which resulted in favor of the respondents,

who, in the absence of any restraining or injunctive order, still continued to make improvements.

Two things are well settled in the law, as shown by the case of *Johnson v. Mt. Baker Park Presbyterian Church,* 113 Wash. 458, 194 Pac. 536; first, that, under a restricted building scheme, one grantee may have a right of action against another grantee for a violation of the restriction without showing that such violation will result in damage to the complainant; and second, such grantee's right is not because the covenant or restriction runs at law with the land, but because his right of action is based upon the doctrine of equitable estoppel.

When a court of equity is asked to enforce a covenant by ordering specific performance, or granting an injunction to prevent a breach of it, equitable principles will prevail and the rules of fair dealing and good conscience must be applied to ascertain, among other things, if the conduct or acquiescence of the plaintiff concerning the transaction complained of has been such as to preclude him from obtaining the relief prayed for.

It is contended by the complainants that the questions raised in this case are practically all decided by this court in the case of *Johnson v. Mt. Baker Park Presbyterian Church, supra.* We are satisfied, however, that that case and the present one are dissimilar in very important particulars. In that case, against the contention of the defendant that the original building scheme had not been complied with by others, it was stated in the opinion that the original plat used in selling lots showed that lots were sold or held in reserve for about all the buildings complained of. In the present case, there is an entire absence of any such showing with respect to the places and businesses that do violate the building scheme. In that case, the re-

striction was unlimited as to time, while in this case the time limit had only about three years to run. In that case, it does not appear that the defendant had expended any money or labor or entered into any contract for building or material at the time the suit was commenced. In the present case, the respondent's building permit was nearly two months old and his improvements had gone on for a month when appellant purchased the adjoining lot. He watched the construction go on, day by day, for nearly three weeks, garages built and one house roofed in, had the use of part of the earth removed to improve his own property, building contracts had been entered into by the defendants under which material was delivered on the ground, and an expensive foundation put in before any objection was attempted to be asserted, after which, while the work was still going on, he delayed two weeks before commencing his action. These differences are highly important in the application of equitable rules and principles.

It must be taken to be fair and equitable that if, at the time one purchases property under such a restrictive building plan, he knows that his grantor or grantors, back to the common grantor of all the property in the district, together with the grantees of other parcels of the property, have stood by without protest while a substantial number of persons built and for considerable time maintained structures and businesses that violate the restriction, that then such purchaser stands at the same disadvantage to make complaint against some subsequent builder proposing to violate the strict letter of the covenant as would the original common grantor. The whole scheme is a community one designed from the beginning for the benefit of each and all of its members, which at the same time imposes obligations upon each for all against deviations or the

permitting of them at the risk of depriving others of the rights and benefits originally intended.

Among the well reasoned cases announcing the principles to be observed under such circumstances is that of *Roper v. Williams,* 37 Eng. Rep. (Ch. Book 17) 999, 1 Turn. & R. 18, written by Lord Eldon in 1822. It was a suit to enjoin a violation of a building scheme provided by the owner for a specific district. In the opinion it was said:

"The landlord in such a case is stipulating not only for his own benefit but for the benefit of all the tenants in that neighbourhood. If therefore the landlord in some particular instances lets loose some of his tenants, he cannot come into equity to restrain others from infringing the covenant to whom he has not given such a license. He may have a good case for damages at law; but if he thinks it right to take away the benefit of his general plan from some of his tenants, he cannot with any justice come into equity for an injunction against those tenants. It is not a question of mere acquiescence: but in every instance in which the grantor suffers grantees to deviate from a general plan intended for the benefit of all, he deprives others of the right which he had given them, to have the general plan enforced for the benefit of all."

It was further said in the same case:

"There is another view in which this case may be considered: every relaxation which the plaintiff has permitted in allowing houses to be built in violation of the covenant amounts *pro tanto* to a dispensation of the obligation intended to be contracted by it. Very little in cases of this nature is sufficient to shew acquiescence; and courts of equity will not interfere unless the most active diligence has been exerted throughout the whole proceeding. It is not sufficient to have given notice of the covenants in 1818. In every case of this sort the party injured is bound to make immediate application to the Court in the first instance; and cannot permit money to be expended by a person, even though he

has notice of the covenant, and then apply for an injunction.''

To the same general effect is the recent English case of *Sobey v. Sainsbury* (1913), 2 Ch. Div. 513, wherein, upon referring to previous decisions, it was said:

''On the principles enunciated in those cases the acts and omissions of the plaintiff and his predecessors in title, and particularly the non-enforcement of the covenant as to plot No. 1, plot No. 3, plot No. 5, and plot No. 9, are amply sufficient to prevent the Court granting the equitable relief by way of specific performance of the covenant, or, in other words, by way of injunction, which the plaintiff is claiming. But if this alone were not enough I think the Court is, under the express and precise language to that effect both of James L. J. in *German v. Chapman* (4) and of Lindley L. J. in *Knight v. Simmonds* (5), entitled also to take into account the general change in the character of the neighbourhood irrespective of the particular acts and omissions of the plaintiff and his predecessors in title. And if once this is done it is difficult to imagine a stronger case than this for declining to grant specific performance of the covenant by way of injunction.''

Not alone one or more reasons, each of which may be sufficient, but the total effect of a combination of circumstances and conduct must be considered in deciding such cases. In the case of *Ewertsen v. Gerstenberg,* 186 Ill. 344, 57 N. E. 1051, it was said by that court:

''Equity will not, as a rule, enforce a restriction, where, by the acts of the grantor who imposed it, or of those who derived title under him, the property, and that in the vicinage, has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction; *or, in short,* it may be said that where, from all of the evidence, it appears that it

would be against equity to enforce the restriction by injunction, relief will be denied, and the party seeking its enforcement will be left to whatever remedy he may have at law. *Brewery Co. v. Primas,* 164 Ill. 652, 45 N. E. 145; *Coughlin v. Barker,* 46 Mo. App. 54; *Duke of Bedford v. Trustees British Museum,* 2 Mylne & K. 552; *Sayers v. Collyer,* 24 Ch. Div. 180; *Page v. Murray,* 46 N. J. Eq. 325, 19 Atl. 11; *Jackson v. Stevenson,* 156 Mass. 496, 31 N. E. 691; *Bangs v. Potter,* 135 Mass. 245; High, Inj. § 1158; *Trustees v. Thatcher,* 87 N. Y. 311.''

In the case of *Ocean City Association v. Chalfant,* 65 N. J. Eq. 156, 55 Atl. 801, it is stated:

''The recognized doctrine is that where a vendor sells off an estate in lots, with restrictions upon the use of the lots sold, he will lose his right in equity to enforce the restrictions against one grantee, if he has knowingly permitted other grantees to violate the same restrictions, the effect of which violation is to abrogate the purpose of the restriction and alter the general scheme intended to be conserved by it. *Roper v. Williams,* 1 Turn. & Russ. 18; *Peek v. Matthews,* L. R. 3 Eq. 515. This rule is applicable whether the suit is brought by the covenantee or by one of several grantees of land sold in accordance with the general scheme by the original covenantee. It rests upon the equitable ground that if anyone who has a right to enforce the covenant and so preserve the conditions which the covenant was designed to keep unaltered, shall acquiesce in material alterations of those conditions, he cannot thereafter ask a court of equity to assist him in preserving them.''

In High on Injunctions (4th ed.), vol. 2, § 1159, the rule is stated to be:

''In considering applications for relief by injunction against the breach of restrictive covenants contained in conveyances of real property, the courts require due diligence upon the part of the plaintiff seeking the relief, and laches or acquiescence on his part in the violation of the restrictive covenant will ordinarily defeat his application. Indeed, equity requires the utmost

12—132 WASH.

diligence, in this class of cases, upon the part of him who invokes its preventive aid, and a slight degree of acquiescence is sufficient to defeat the application, since every relaxation which plaintiff permits in allowing erections to be made in violation of the covenant amounts, *pro tanto,* to a disaffirmance of the obligation."

While other relevant cases, American and English, have been considered and might be cited herein, there is no occasion to pursue the inquiry further. Upon consideration of the whole case, we are of the opinion that the trial court correctly decided the matter.

Affirmed.

PEMBERTON and FULLERTON, JJ., concur.

BRIDGES, J. (concurring)—I concur in the foregoing opinion on the following grounds: first, that the building restrictions had been habitually violated before appellants bought their property; and, second, because they are estopped by their conduct to complain.