[No. 22303. Department Two. July 8, 1930.]

E. F. TINDOLPH *et al., Respondents,* v. SCHOENFELD BROTHERS, INCORPORATED, *Appellant.*[1]

*Battle, Hulbert & Helsell* and *Shorts & Denney,* for appellant.

*Chas. E. Congleton,* for respondents.

FRENCH, J.—Approximately twenty years ago, the Seacoma Beach Improvement Company platted certain lands on Three Tree point, about fourteen miles south of Seattle on Puget sound. In so far as this case is concerned, the tract of land in question was divided into twenty-three lots or parcels; and, we may assume for the purpose of this case, was surveyed and staked out showing upon a map or plat the size of each of the respective tracts, together with sufficient data so that, as they were sold, they might properly be described by metes and bounds description. The plat itself was never filed or recorded, and seems to have been used

[1]Reported in 289 Pac. 530.

only for the purpose of designating the exact location of the various tracts or lots upon the ground.

In June, 1913, tract 8 was sold by the Seacoma Beach Improvement Company by metes and bounds description to one Mary E. McLaren, the deed containing certain building restrictions which, in so far as they are material to this case, read as follows: "The second parties, heirs and assigns, also agree . . . and not to construct on said tract more than one residence." This tract was thereafter deeded to one White, and the tract in question, being one hundred twenty feet wide, the northerly one-half of it, being a tract sixty feet in width, was thereafter deeded by White to the appellant, the deed to appellant containing no restrictions, but containing the following recitation: "This conveyance does not warrant against conditions and restrictions contained in deeds under which title is claimed."

On the half of the lot or tract not sold to appellant, there is already a house. Appellant desiring to erect a house on the portion of the land which it had purchased, and having already built a garage preliminary to erecting a dwelling house, this action was brought by respondents, owners of one of the tracts of land which had been conveyed by the Seacoma Beach Improvement Company, to prevent the erection of a house on the portion of the tract purchased by appellant, for the reason that there was already one house upon said tract. This appeal is from a judgment enjoining the erection of any house and compelling the removal of the garage structure already built.

The general law relative to restrictions has been covered by this court in the case of *Johnson v. Mt. Baker Park Presbyterian Church*, 113 Wash. 458, 194 Pac. 536, and that such restrictions, when a part of a general plan under which an addition is marketed,

and pursuant to which the lots or tracts generally have been sold, will be enforced, is well settled. And that such restrictions, generally speaking, inure to the benefit of the various respective lot owners, is equally well settled.

But it is equally well settled that the scheme or plan must apply substantially to the entire tract sold. The facts in this case show that the original body of land here in question was divided into twenty-three lots or tracts, and in this connection it must be remembered that the plat was not recorded so as to make effective any dedication or restriction contained on such plat if any actually did appear thereon. Twelve of the twenty-three tracts sold contain the restrictive clause providing that not more than one house should be built on a lot or tract, and practically the only testimony concerning the restrictions was that five of the original purchasers of lots testified as to conversations with, and representations made by, the manager of the Seacoma Beach Improvement Company, relating to the fact that such restrictions were to be included in all deeds. Eleven of the lots conveyed contained no restriction. One of the twelve lots containing such provision was divided and two houses built thereon. Three of the lots containing no restrictions have been divided, and two houses have been built on each of such tracts as thus divided.

The leading case covering the question of covenants relative to the restrictive use of the lots is *De Gray v. Monmouth Beach Club House Co.*, 50 N. J. Eq., 329, where the rule is laid down that:

"The law, deducible from these principles and the authorities, applicable to the case, is, that where there is a general scheme or plan, adopted and made public by the owner of a tract, for the development and improvement of the property, by which it is divided into streets, avenues and lots, and contemplating a restric-

tion as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser; and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and to have the benefit thereof; and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan; one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns, if he has bought with knowledge of the scheme, and the covenant has been part of the subject matter of his purchase.''

In the same case, however, it is announced that the action is held not to be maintainable between purchasers not parties to the original covenant in cases in which it does not appear that the covenant was entered into as a part of, or carried out some general scheme or plan for the improvement or development of the property, or where it appears that the original plan has been abandoned or the character of the neighborhood has been so changed as to defeat the purpose of the covenant.

The rule is stated in 18 C. J., p. 395:

''But a general building scheme for an entire tract is not shown where, although the original proprietor makes conveyance of portions of such tract subject to restriction, he also conveys large portions of it free from any restrictions whatever.''

In the case of *Sailer v. Podolski*, 82 N. J. Eq., 459, the court states:

''In the year 1901 Petroff and Newton owned a wild tract of land and laid it out into thirty-three building lots for the purpose of making sale of the lots. Streets were by them projected on three sides of the property and a street projected through it; in this manner street fronts were provided for all the lots. All of these lots have since been sold. The conveyances from these common owners to defendant's predecessor in title

was dated December 16th, 1901, and contained the restrictive covenants referred to. The conveyance from the common owners to complainant's predecessor in title was dated May 19th, 1902, and contained similar covenants. When this conveyance was made by the common grantors to complainant's predecessor in title seventeen of the lots had been conveyed by the common grantors by deeds containing restrictive covenants and seven without restrictive covenants. A month later the remaining eight lots were conveyed by the common grantors without restrictive covenants. It thus appears that in a tract comprising thirty-three lots eighteen lots were conveyed by deeds with restrictive covenants and fifteen without; and at the time of the purchase by complainant's predecessor in title seven lots had been conveyed free from restrictions. When complainant purchased from her predecessor in title fifteen, or nearly one-half of all the lots comprising the tract, had been conveyed by the common grantors free from the operation of restrictive covenants. It seems clearly impossible to regard an enterprise which has been developed in the manner stated as one embracing the necessary elements of a general scheme or plan to subject the several lots of the tract to the operation of uniform restrictions."

The rule is stated in Berry on Restrictions on Use of Real Property, p. 348, as follows:

"Such covenants are entered into by the grantees for their mutual protection and benefit, and the consideration therefor lies in the fact that the diminution in the value of a lot burdened with restrictions is partly or wholly offset by the enhancement in its value due to similar restrictions upon all the other lots in the same tract."

Again, in Thompson on Real Property, § 3398, it is stated:

"If, however, the grantor has conveyed some of the adjacent lots by deeds containing no restrictions, the inference of a general plan of restrictions for the benefit of all of the lots is negatived."

See, also, *Stevenson v. Spivey,* 132 Va. 115, 110 S. E. 367, 21 A. L. R. 1276.

The rule laid down in the comprehensive note in connection with *Korn v. Campbell,* 192 N. Y. 490, 85 N. E. 687, 37 L. R. A., (N. S.) 1, is to the effect that, in order to be binding, a comprehensive plan or scheme must have been adopted by the original vendor of the property, and that at least substantially all of the property sold must be subject to the covenants sought to be enforced.

In the instant case, the property, as subdivided, contained twenty-three tracts. As heretofore stated, these tracts have all been sold by the Seacoma Beach Improvement Company, the original owner, the deeds to twelve of the tracts contained the restrictive covenant here in question, and the deeds to eleven of the tracts contained no restrictive covenants whatsoever. At the time of the trial, eight of the tracts were still vacant, eleven of the tracts contained one house, and four of the tracts contained two houses. It will thus be seen that more than twenty-five per cent of the property which has thus far been improved has disregarded the restrictive covenants.

In the case of *Ronberg v. Smith,* 132 Wash. 345, 232 Pac. 283, this court recognized the rule that, where a substantial part of the property has been improved in violation of restrictive covenants in the deed, equity will not permit a plaintiff to enforce the restrictions against one who is building in further violation of such restrictions, the reason for such decision being, among others, that a considerable portion of the property had already been permitted to violate the restrictions, quoting with approval from the New Jersey case of *Ocean City Association v. Chalfant,* 65 N. J. Eq., 156, 55 Atl. 801, where it is stated:

"The recognized doctrine is that where a vendor sells off an estate in lots, with restrictions upon the use of the lots sold, he will lose his right in equity to enforce the restrictions against one grantee, if he has knowingly permitted other grantees to violate the same restrictions, the effect of which violation is to abrogate the purpose of the restriction and alter the general scheme intended to be conserved by it. *Roper v. Williams,* 1 Turn & Russ. 18; *Peek v. Matthews,* L. R. 3 Eq., 515. This rule is applicable whether the suit is brought by the covenantee or by one of the several grantees of land sold in accordance with the general scheme by the original covenantee. It rests upon the equitable ground that if anyone who has a right to enforce the covenant and so preserve the conditions which the covenant was designed to keep unaltered, shall acquiesce in material alterations of those conditions, he cannot thereafter ask a court of equity to assist him in preserving them."

In High on Injunctions (4th ed.), Vol. 2, § 1159, the rule is stated to be:

"In considering applications for relief by injunction against the breach of restrictive covenants contained in conveyances of real property, the courts require due diligence upon the part of the plaintiff seeking the relief, and laches or acquiescence on his part in the violation of the restrictive covenant will ordinarily defeat his application. Indeed, equity requires the utmost diligence, in this class of cases, upon the part of him who invokes its preventive aid, and a slight degree of acquiescence is sufficient to defeat the application, since every relaxation which plaintiff permits in allowing erections to be made in violation of the covenant amounts, *pro tanto,* to a disaffirmance of the obligation."

For the reason that practically one-half of these lots were sold free from restrictions, it seems to us that plaintiffs have failed to establish any general plan or scheme applicable to the entire property. For the reason that more than twenty-five per cent of the prop-

erty thus far improved has been permitted to disregard the restrictions, we think that the case comes squarely within the holding of this court in *Ronberg v. Smith, supra.*

Reversed with instructions to dismiss the action.

MITCHELL, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., concur.