[No. 37867.    Department One.    October 7, 1965.]

F. WHITMORE READING et al., *Respondents*, v. ROBERT H. KELLER et al., *Appellants*.*

*Reported in 406 P.2d 634.

*O'Leary, Meyer & O'Leary,* by *Ernest L. Meyer,* for appellants.

*Parr & Baker* and *Frank E. Baker,* for respondents.

OTT, J.—April 17, 1940, a plat of Sunset Addition No. 6 in Olympia was filed in the office of the County Auditor for Thurston County. The owners and platters of the Addition did not file with the plat any building restrictions. As they sold the residential lots, the deeds contained the platters' restrictive building covenants. Covenant No. 2 provided:

That the said house and garage shall not be built closer to the street lines than thirty (30) feet, that also applies to corner lots; houses must be kept back from the streets on the side lines thirty (30) feet and five (5) feet from the interior lot lines.

All porches are considered part of the house and must stay back from the street lines on inside or corner lots thirty (30) feet.

May 1, 1945, the owners deeded Lots 11 and 12 in Block 5 to Howard C. Moon and wife. The deed was recorded in the office of the County Auditor, and contained 12 restrictive covenants, including the one above quoted.

October 27, 1958, Howard C. Moon and wife sold their lots on contract to Robert H. Keller and wife. The contract recited that title was subject to the "Easements and restrictions of record." The deed, which was placed in escrow, contained no restrictive covenants. However, the Kellers received a title insurance policy, dated November 1, 1958, to which was attached a resume of the platters' 12 restrictive covenants. In October 1959, the Kellers completed payment of their contract, and the deed was delivered to them by the escrow holder.

Lot 11, Block 5, owned by Robert H. Keller and wife, is a corner lot on the southeast corner of the block. Lot 10, Block 5, is a corner lot on the southwest corner of the block, owned by F. Whitmore Reading and wife. The Reading deed contains the same restrictive covenants as those in the

deed to Howard C. Moon, from whom Kellers obtained their title.

December 18, 1961, Robert H. Keller commenced construction of a residence on Lot 11. January 5, 1962, when it became evident from the stakes and proposed footings that the residence would be only 20 feet from the street, instead of 30 feet as provided by the platters' restrictive building covenant No. 2, Mr. Reading contacted Mr. Keller and informed him of the building restriction. When building continued, Mr. Reading again called Mr. Keller and advised him that an injunction would be sought if construction continued as contemplated. Mr. Keller had then expended some $1,500 in construction costs. January 26, 1962, other property owners residing in the addition protested the violation to Mr. Keller in writing.

February 15, 1962, F. Whitmore Reading and wife commenced this action to enjoin the construction of the residence on Lot 11 in violation of the restrictive covenant. By this time, Mr. Keller had expended $6,000 of the total $12,-000 construction cost of the residence on Lot 11.

February 15, 1962, the court granted a temporary injunction restraining further construction. The court dissolved the injunction on March 5, 1962, but orally advised the Kellers "that further construction with attendant expenditures would be absolutely at the risk of the defendants and would have no legal effect upon the Court's decision when the matter came on for hearing on the merits." (Findings of Fact No. 7.)

When the cause was tried to the court on the merits, construction of the residence had been completed. Findings of fact and conclusions of law in favor of the plaintiffs were entered. The judgment granting a permanent injunction is in part as follows:

It Is Hereby Ordered, Adjudged and Decreed that defendants, individually and as a marital community, and any grantees in interest, be and they are hereby permanently enjoined from violating the said restriction, to-wit: enjoined from constructing, maintaining or continuing any structure, and in particular the present residence,

closer to the street line than thirty feet, as such present residence is located on Lot 11, Block 5, Sunset Addition No. 6, according to the plat thereof, as recorded in Volume 11 of Plats, page 24, records of the County Auditor for Thurston County, and defendants hereby are given a reasonable time to comply with such permanent injunction, to-wit: one hundred twenty (120) days from the date of the entry of this injunction decree.

The defendants have appealed.

Appellants assert that "There is very little, if any, controversy concerning the facts in this case," and that the appeal is predicated upon equitable principles.

The trial court found that the appellants, with knowledge of the restrictive building covenant, built their home in violation of it.

The evidence established that respondents had purchased a residence on Lot 9, Block 1, of Sunset Addition No. 6, in which they then resided. The house had been built by the former owners at ground level instead of 12 inches above ground level, as required by the restrictive covenants. Appellants urge that the facts here support the application of the equitable principle that one who has violated a building restriction cannot enforce a building restriction against others. 14 Am. Jur. *Covenants, Conditions and Restrictions* § 338, at 665.

The court found that the Reading property had been built by the former owners in violation of the restrictive covenant, but nevertheless granted respondents the relief prayed for. We must, therefore, conclude that the trial court held that the facts brought the respondents within the exception to the general rule, in that the violation was of a minor nature and did not destroy the building scheme. See *J. L. Cooper & Co. v. Anchor Sec. Co.*, 9 Wn.2d 45, 113 P.2d 845 (1941); *Romberg v. Smith*, 132 Wash. 345, 232 Pac. 283 (1925); 14 Am. Jur. § 338, at 665, *supra.*

Appellants next contend that there has been no consistent compliance with covenant No. 2, particularly along Blass Street, and that failure to enforce the covenant constitutes a waiver of its provisions. Appellants rely upon

*Mt. Baker Park Club v. Colcock,* 45 Wn.2d 467, 471, 275 P.2d 733 (1954), which states:

This court has recognized that owners of land have a right in equity to enforce covenants to which they are not parties when it appears that a general building scheme or plan for development of the properties has been adopted, which plan is designed to make it more attractive for residential purposes by reason of certain restrictions imposed on each of the separate lots. *Johnson v. Mt. Baker Park Presbyterian Church,* 113 Wash. 458, 194 Pac. 536 (1920) and cases cited.

If, however, the general building plan has not been applied to the entire tract (*Tindolph v. Schoenfeld Bros.,* 157 Wash. 605, 289 Pac. 530 (1930)), or after the plan was established it was habitually and substantially violated, so that it might be said to have been abandoned, then equity will not enforce the covenants. *Ronberg v. Smith,* 132 Wash. 345, 232 Pac. 283 (1925).

The trial judge inspected each of the alleged violations on Blass Street, and, in his memorandum opinion, concluded:

There is only one violation of the covenant, here in question, which is actually established other than the subject one. That is the property referred throughout the trial as the VanMeter house. That property is at the extreme edge of the sub-division and both the evidence and the Court's view of the premises indicate that it is at the end of a street.

The court further found that "Of the ninety-one lots in said Sunset Addition No. 6 this has been the only violation of such covenant from the date of platting Sunset Addition No. 6 on April 17, 1940, to the date of the purchase of the defendants' [appellants'] property." (Finding of Fact No. 9.)

The court concluded that the appellants had failed to establish an adequate defense and bring themselves within the rule announced in *Mt. Baker Park Club v. Colcock, supra;* therefore, their contention that enforcement of the restrictive covenant had been waived was without merit. We agree. The trial court properly applied the rule an-

nounced in the cited case to the facts established by the evidence.

Finally, appellants contend that the respondents have been guilty of laches, in that they failed to act promptly to prevent the appellants from suffering a substantial financial loss, and that now to require the appellants to comply with the restrictive covenant is an unconscionable penalty.

The trial court found that there had been no laches on the part of the respondents. This finding is supported by the fact that the restrictive covenants were included in the title insurance policy which appellants received, by the prompt notice which respondents gave to appellants as soon as the violation became apparent, and by the court's admonition to appellants, at the time the temporary restraining order was dissolved, that further construction would be at their risk.

There was a delay of approximately 6 weeks after respondents gave notice to appellants of their intention to enjoin before the action was commenced. During this time, the parties were trying to effect a settlement. A reasonable delay caused by an effort to settle a dispute does not invoke the doctrine of laches. *Mt. Baker Park Club, v. Colcock, supra.*

The judgment is affirmed. Since the time for compliance with the provisions of the judgment has expired, appellants are granted 120 days from the date the remittitur is filed in the office of the Clerk of the Superior Court for Thurston County for compliance.

Rosellini, C. J., Hill and Hale, JJ., and Langenbach, J. Pro Tem., concur.

December 3, 1965. Petition for rehearing denied.